Good morning, ladies and gentlemen. Let's start with our first case on the docket. Carstens-Wickham v. Sedycias. Thank you, counsel. All right. Please proceed. Good morning, and may it please the Court. My name is Leslie Offergeld, and I represent Plaintiff Appellant Linda Carstens-Wickham. The issue in this case is whether the trial court erred in dismissing this case for lack of subject matter jurisdiction. First, I wanted to tell you what this case is not about. This case is not about a lawsuit against Southern Illinois University. We're not seeking any type of remedy against the university. The only thing the university had to do with this case is that they were the stage for the defendant's wrongful conduct. Another thing this case is not about, it's not about the letter that the defendants submitted to the chancellor of the university as part of the appeal process, and that was to determine whether the plaintiff's name should be reinstated to the ballot for the election of the chair of the Foreign Languages Department. It's not about that letter being about the plaintiff's fitness to serve as a department chair, because that issue was decided against the defendants. The chancellor found those statements made concerning the plaintiff's misconduct were false, and that the plaintiff deserved to be on that ballot. What this case is about, after the defendants lost the appeal to the chancellor, they spread this letter accusing the plaintiff of sexual misconduct to persons throughout the university. In the case of defendant Romero, even to a faculty at a university in the state of Georgia, they gave the letter to people having no supervision responsibility over the plaintiff, those having nothing to do with the appeal, and those having nothing to do with the election of her as department chair. They distributed to other departments in the College of Arts and Sciences, and those departments would include the English Department, the History Department, Mathematics, Economics, and so on. According to the allegations, they distributed to other faculty in the university, other department chairs, and the other colleges, including the School of Business. Counsel, was your complaint specific as to exactly who it was distributed to? Such was the specificity that you just argued? No. The allegations were that they distributed it to other people throughout the university, not just limited to the people in her department or people having supervision over her. So was that before then the trial court, or that you were very specific on who that went to? No, that was not before the trial court. It's just a matter of public record, the other colleges and departments at the university. It's a matter of public record that that letter went to the... No, not that the letter went to there. The allegations are that the letter was sent to other people throughout the university, including those in other departments. It's a matter of public record that the other departments would include those that I just mentioned. Another thing that this case is about is that in distributing the letter all over the university, the defendants violated the university's own policies and procedures about keeping that letter and the statements contained in it confidential to the appeal process. They also violated the confidentiality provisions of the sexual harassment policy and procedures of the university. So viewing the pleadings, the affidavits, and the evidence most favorable to the plaintiff, as the court must do, the facts in this case and the allegations point to the conclusion that these defendants distributed that letter not in furtherance of their official duties, not as part of their jobs, but rather with personal malice and retaliation for the plaintiff winning the appeal, leading the opposition to Sedisius as department chair, and voting to fire Romano as dean, and they did it in violation of university policy. There are two 5th District cases that speak to this issue. The false statements made in excess of authority and outside the scope of the employee's or supervisor's employment do not fall within the concept of sovereign immunity. In Hoffman v. Gack and in Bush v. Bates, those courts held that where statements are made in excess of authority, that those statements are not protected by sovereign immunity. In Hoffman, those statements were made by the plaintiff's supervisor to her or his superiors, and they included statements concerning his professional competency in addition to other statements concerning sexual aberrations, racist views, and their integrity. In Bush v. Bates, the statements involved the plaintiff police officer's professional integrity during a homicide investigation made in retaliation for a complaint that the plaintiff made against another officer. So both of these statements included work-related conduct, both of these cases did, and the courts held that they were not protected by sovereign immunity. Let me refresh my recollection on this. The circulation of the letter that took place after the chancellor had ruled and the plaintiff was placed back on the ballot for a chair, was it before or after the election for a chair? I know it was after the appeal process was completed and after the plaintiff was reinstated to the ballot, but I'm not sure. There was a contest for chair? Right, there was a contest for chair between the plaintiff and Sedisius. And was this letter circulated before, during, or after that contest? It would be before, before the actual election. And was it circulated to people in the university who were not casting a ballot in this contest? Correct, correct. Who cast the ballot, just people in that one department? People in the department, yeah, faculty in that one particular department. Okay. That is a very small group of people. Correct. Another case that speaks to the issue is the Supreme Court's case, Supreme Court's decision in Leetoro. And there the plaintiff alleged that the defendants violated the university's policies and procedures governing the investigation of academic misconduct. The court found these constituted allegations that the defendants' actions were unauthorized because they violated the university's own policies. And the defendants were not protected by sovereign immunity. Here we also allege that the defendants acted far in excess of their authority and violated university policies. The confidentiality policy of the appeal process, that letter was, and the allegations made in it were to stay within the confines of that appeal process. They also violated the confidentiality of the university's sexual harassment policy. Any type of allegations made against a professor were to be kept confidential and there were procedures in place to govern that. They violated those policies. They distributed the letter throughout the university. The defendants' cases are just not on point here. In those cases, Wozniak, Carmody, and Courtright, the publications that the defendants made were not made throughout the plaintiff's workplace. In Wozniak, they were limited to the others in his department and the executive committee members. In Courtright, there were statements made to the plaintiff herself concerning her incompetency. And in Carmody, there was a termination letter that was placed in the plaintiff's personnel file and given to a person in the human resources department. In addition, there were no allegations in any of those cases that the defendants violated the university's policies or that those statements were made out of personal malice or personal animosity and not for the welfare or benefit of the university. If you want to look at it in a context that you may be able to relate to, say Justice A. of the Fifth District Appellate Court is going to put his name in the hat for presiding judge. And Justice B., the current presiding judge, has a grudge against Justice A. for voting against him in the prior selection of presiding judge. And he wants his friend to get elected instead. So Justice B., the current presiding judge, sends a letter to the Chief Justice of the Illinois Supreme Court saying that Justice A. did some type of misconduct in office. Well, the Supreme Court finds in Justice A.'s favor and finds that those allegations were false and that Justice A. had a right to be on the ballot. And then Justice B., the presiding judge, and his friend go ahead and distribute this letter stating Justice A. committed this misconduct in office. Not only to the other justices of the Fifth District Appellate Court voting in the election, but to their staff, their law clerks, their secretary, other people in the court, in the clerk's office. And not only that, they even go on to distribute that letter to the other justices in the other appellate court districts, the First, Second, Third, Fourth District. And beyond that, they distribute that letter and its contents verbally to an appellate court in Ohio when they were a guest speaker there. Now, I think you would agree that Justice B. and his friend were not acting in the scope of their authority or in the course of their employment by distributing that letter to people who had nothing to do with the election and out of personal malice and in retaliation, not for the welfare or benefit of the court. And that's what the case is here. Defendants distributed this letter to faculty in other colleges within the university, other department chairs. These are alleged in the complaint. University personnel and Defendant Romero even went so far as to distribute this information verbally to faculty at a university in Georgia. Counselor, let me go back to your previous point. Dr. Romero in the affidavit that he that was his affidavit that was filed with the 216-19 motion states that he did not have any communication with any employee of the university about plaintiff that were unrelated to Dr. Romero carrying out his responsibilities and role as dean of the college. And you just said that he distributed to other deans, to other people that weren't related with this responsibility that he had in connection with this matter. Before the trial court, was there a counter affidavit or was there an allegation in a verified complaint to refute Romero's affidavit that he only communicated with this in connection with his responsibilities and role as dean? Yes, the plaintiff submitted a counter affidavit at the time she filed her verified second amended complaint and that affidavit did dispute and countered those statements. And did it name people that received this that were not in connection with his duties as dean? I'm kind of repeating my question. I'm getting back to your saying, well, send it to this dean, to this person, to this person. Has that, was that before the trial court? Yes. And how was it before the trial court? Well, the allegations and the affidavit, plaintiff stated that the letter was distributed to other department chairs, those not in the foreign language department, who obviously had nothing to do with the plaintiff's selection as department chair for the foreign language department. They were submitted to university personnel in general and to various unknown persons at the university. They didn't, she didn't name names. I mean, that would be part of the discovery process, which we weren't allowed to conduct. Well, and in defendant Romero's affidavit, I mean, what he said was stated in a conclusory fashion. That's true. Just as Justice Swarm just now said it. I mean, he didn't go on and give any specifics about how this related to his job or how submitting it to some other department head was within the scope of his duties. He just, in a conclusory fashion, said this was all part of my job. Correct. And I think the circumstances surrounding and the plaintiff's affidavit dispute that. It's not part of your job to send the, to make copies of the letter and send it to all the other department chairs, people throughout the university. That's not within the scope of his duties. Or at least there's a factual issue about that. Well, I don't think there's a factual issue, but yet, at the very least, there's a factual issue. Correct. So I think what the defendants are going to argue is that so long as a supervisor makes statements concerning a subordinate regarding work-related behavior, that that's protected by sovereign immunity regardless to whom these statements are made to and regardless of whether they violate university policy. So that if that, taking that argument to the extreme, if the statements were made to a janitor, a student, a visiting professor, they would be protected. But that cannot be the case. And the Hoffman case and the Bush case, the Littaro case, all say that if you make these statements in excess of your authority, that you are not protected by sovereign immunity. You're not doing this for the benefit of the university. You're doing it out of your own personal animus and personal reasons. And I'm going to stand on my brief as to my other arguments unless you have any further questions. Are there any further questions? Thank you, counsel. You'll have a chance for rebuttal. Argument for the athletes. And I'd like to caution you. It's up to you guys to divide your time. Yes, sir. The timekeeper's not going to divide it for you, so. You should know way better than that, Your Honor. If I go too long, we can work it out in advance. I give you that caution because the first guy always talks too long. This is true. Guilty as charged, Your Honor. And may it please the Court, my name is Ian Cooper, and I represent the athlete Dr. Aldemaro Romero. And let me see if I can dive right in and answer some of the questions that have been raised by the Court thus far this morning. First of all, with regard to my friend's comments as to what the lawsuit is about, I've tried to make it clear in our brief. That the issue before this Court is not how the plaintiff's counsel characterizes the lawsuit. But rather, it involves the analysis of whether any claims sounding in court fall within the parameters of the State Lawsuit Immunity Act and the Court of Claims Act. Because remember, the textual analysis of the statutes is critical here. And the Court of Claims Act makes it crystal clear that any claims in tort against the State may only be brought in the Court of Claims. So it's not about how the plaintiff respectfully characterizes her lawsuit. It's about... Well, we have to look at the complaint to make that determination. Exactly. And we're here on a 2-619 motion. Precisely. And we have to take whatever's in that complaint as true. If I could, Your Honor. Is that correct? I think what we need to do... Is that correct? We need to take the allegations as true for purposes of the motion. And I think Your Honor is absolutely correct that the first place we should look for what the claims are about is the Second Amendment complaint. Which is verified. Which is verified. And in Paragraph 18 of Count 3, the three counts directed against my client, Paragraph 18, this is exactly what the plaintiff alleges. Additionally, by defendants knowingly making false allegations of sexual misconduct to university officials, defendants acted in violation of state law and with malice. That there could be no clearer claim then, using the language from the statute, raised by plaintiff in Paragraph 18 of Count 3, that my client, Dr. Romero, as dean, as a state employee, made statements about another state employee, the plaintiff, to university officials with regard to her fitness to serve as a department chair. Well, you're pulling a particular paragraph out, but you're not trying to tell us, are you, that there aren't other allegations in this complaint that allege that your client made these claims to people, other department heads, to people outside of those who had anything to do with her work or his work. That's all in there, isn't it? Well... And that it was all done after, that this was done after the appeal process. I respectfully disagree with the second point in particular, that the Second Amendment... Okay, let's go to one specific thing, then. What about the trip to the, I think it was a school in Ohio? Correct. There is an allegation... There was a specific count. He responded with reference to plaintiff's condom. But the, I think the question that I'm trying to focus on for this court is, and I'm not sure it's actually been answered very clearly by other courts, is what do you do when you have a claim or claims within a complaint that are clearly covered by the Court of Claims Act? Well, let me ask you something. Sure. You take that one paragraph and it talks about distribution to university officials. Would the chair of a department other than the Department of Foreign Languages be a university official? Well, I don't think so. And because... If they have responsibility as a chair, they have some administrative responsibility, why would they not be a department, I mean a university official? Well, that's a good question, and I think the fairest answer is the complaint doesn't tell us, because it uses that phrase. Isn't that a function of discovery to flesh out who the other, quote, university officials are, and based on the discovery determination as to whether these people were in the constituency voting for chair of that particular department, or whether this was spread outside of that department who were irrelevant to that particular election? Well, I think the answer to the question as to whether or not this court had jurisdiction should be answered on the basis of the complaint we're looking at, the Second Amendment complaint, and the materials filed in support of the 2619 motion and in opposition to it. And I don't think there's a need for discovery, respectfully, Your Honor, on these issues with regard to what the nature of the allegations are, because that's really the touchstone of what this court must look at. And so what I was suggesting to the court is what do you do when you have a situation which we take the position that there's clearly allegations in the Second Amendment complaint that relate to his conduct as a dean with regard to a subordinate, I mean right within the kind of fact pattern that we had in the Wozniak case, and Carmody, and Courtright as well. Well, the focus of this debate here in court is not focused primarily on his duties and the co-defendant's duties, whatever they might be, within that department. The gist of this complaint is spreading this – part of the gist of this complaint is spreading it to people who were profoundly irrelevant to this and that it was done for malicious intent and was baseless and untrue. There's no question the department chair has certain administrative duties, disciplinary duties, whatever duties the chancellor happens to give that particular individual. But I think your focus is a bit too narrow. I think we're talking about a broader universe, and I don't think the paragraph that you cited, paragraph 18 of count three, restricts the scope of that universe. It's being – distribution to people within the department, the duties of the department chair and people totally outside the department and not part of the voting constituency for chair is included in that paragraph, and I think you're trying to narrow the language where it won't bear it. Well, your honor, if you feel that way, I'll have to just respectfully disagree because I think I'm looking – and most respectfully, I might add. I'm looking at, I think, a fair reading of the Second Amendment complaint, and that's all this court can do, that's all the Supreme Court can do, that's all the trial court can do is what are the allegations? I mean, clearly the context of this entire dispute is in a state university about an appointment to a state position and conduct by a state employee paid by the state that is being challenged by another state employee. And the main issue is were those – was that conduct by the defendants outside of the scope of their authority? Right. And the Second Amendment complaint alleges that it was. And in your client's affidavit, he says it was not. So why do we not at least have a factual issue that has to be threshed out? Because the point that I'm trying to urge upon the court is that because within the complaint there are clearly challenges to Dr. Romero's conduct as a state employee when he distributed the information to persons who had a right to get that without dispute that Plaintiff isn't challenging. Well, there are certainly allegations about this whole thing about the election and the appeal process and all that which sets the stage, but also just as clearly the gist of the complaint is that's not what they're trying to recover for. They're trying to recover for what was done outside of that process. Well, if that were true, why does Plaintiff include the statement that the alleged facts set out in Exhibit A are, if written, libelous per se, and if spoken, slanderous per se, and on their face provide a basis to cause extreme emotional distress to Plaintiff as all the statements are false? That's paragraph 17 of count three. Okay. That is saying that any utterance of the statements that she says Dr. Romero made was slanderous, regardless of to whom they were made. Say they were made as part of a statement to the President, which in fact the letter is sent to the President. Okay, the challenge letter is being sent to the President. So here's the problem here. Let me just get right down to brass tacks if I can. If there are allegations in the second amendment complaint that relate to the conduct of Dr. Romero in proceeding through the process along appropriate channels, giving this to the President, the OIG appeal and all that, that's all very much pleaded in this. If it's irrelevant, his official conduct, why was it pleaded? Why was he even referenced? Do you hear what I said a minute ago? Set the stage. I mean, in any complaint, I mean, say you're talking about an automobile accident, you start off and say, A, he was driving his automobile down Interstate 57 in a south direction. But, Your Honor. And that doesn't have anything to do with the gist of the complaint other than setting the stage for what later happened. Well, that's not. You've got the same thing here. No, Your Honor. I don't believe so. Because the relief has not been restricted to seeking damages only for statements made to a certain subgroup of people. In fact, the exact opposite is true. She is seeking damages in this case for any alleged defamatory statement. Are you talking about including during this appeal process? Before, after, it's a distribution of what she's claiming was false and malicious. Well, I have to disagree with you. I don't think that's what the complaint says. I mean, it seems pretty clear to me that the only thing they're seeking damages for are conduct outside of this actual process. Your Honor, I'm looking at count three. And, okay, let me just ask you. If that's what they're doing, then do you agree we should reverse the trial court? No, not at all. In other words, I mean, you're going to make the same argument even if she is only seeking damages for things that happened outside of this appeal process, right? I believe that the trial court was absolutely correct because the trial court concluded that this second amended complaint includes claims, which is the word used in the statute, against the state. And I think that's what this court must focus on, not whether there are other claims that are outside, but if there are any claims. The state is not named. The university is not named. Only the individuals are named. Okay, let's just assume for a minute she's only seeking damages for actions and conduct that occurred outside of this appeal process having to do with this election. Tell me in a nutshell. I had a hard time understanding it reading your brief. How does this affect the state? Okay, and I'm glad you asked that question because you're absolutely right that the Supreme Court has said that there are really kind of two tests going on here. There's the three-part test, and then there's a separate control test that Curie v. Lowe and Jenkins v. Lee talk about. And I think the answer to your question is best stated by the court in Watson who wrote, which wrote, the threat of private suits against supervisors for word-related statements about those under their authority clearly would affect the way supervisors communicate, allocate tasks, and make employment decisions. And so that's exactly what the plaintiff is trying to do here. You shouldn't have talked to this person. You should have talked to that person. You could only talk to this person. So this is a dean who's trying to deal with an employment issue as to whether or not someone is fit to serve in a capacity as a department chair. And Senator Smith, if this under the allegations of the complaint, then is it part of his job to distribute these kind of allegations to other department heads who aren't involved in this department, who have no supervisory authority over this professor, et cetera? Think about what we're talking about, Your Honor. I mean, we're talking about, okay, let's say one person clearly was entitled to get that information because it was relevant to the decision-making process and another person wasn't, okay, which is essentially, I think, what the plaintiff is saying here. And so we're going to allow a suit against a state employee for erroneously, let's say, making a statement to someone who maybe was marginally involved in the process and shouldn't have gotten it. Now we're going to have a tort claim against that person, and that will control the way that person acts and disseminates information relating to an employment decision about a state employee. And that's exactly what the court in Wozniak v. Connery was talking about. And they conclude with, a suit such as that necessarily threatens to control. And by the way, remember the formulation of that test is not whether it would control the actions of the state. It's whether it could control the actions of the state. It's much broader. And it looks to this kind of formulation because that's what we're talking about. We're talking about imposing individual personal liability against a state employee in a state context. And that would absolutely threaten the way they conduct business and go about making employment decisions. Let me make sure I understand part of your argument here. You're arguing that in a situation where there are some allegations that maybe fit within the scope of his authority and some that don't, it all has to get swept to court of claims. Well, that's a great question. Is that what you're arguing? I am arguing that. That's the only one that makes practical sense. Okay, so let me ask another question. Why can't this get narrowed down through the process of heading toward trial discovery and so forth and amended complaints so that it's very clear exactly what the plaintiff's claiming that she's recovering for? Well, the reason it can't, Your Honor, is because we argued a 2619 motion. This is the second amended complaint. This isn't the first complaint. This is the third time this has been done. I actually filed motions with regard to the prior complaints, and the plaintiff didn't raise that argument, Your Honor. The plaintiff didn't raise the argument. No, she's arguing all along that she's only trying to recover for things that happened outside the scope of the authority. Respectfully, Your Honor, that's her characterization of it, and it's not what the complaint says, with all due respect. The plain and clear reading of the complaint is that it includes claims against Dr. Romero talking to others who are university officials about whether or not she's fit to serve as chair. Your Honor, I would love to spend about another two hours with you, but I can't, or my friend will start screaming at me. So I'm going to sit down now, and I'm going to also thank the court very much for your time. Good morning. Greg Roosevelt. I represent Dr. Sedatius, and may it please the court, just briefly, counsel has ably gotten involved in this dialogue with you. I am concerned about one issue, because I know counsel or the appellant said, well, we're not here for money from these folks. But when you look at the policy and the law and what the court and the court of claims is concerned about, fundamentally, let's consider a sexual harassment claim by a female student who comes to the chair of the department and says a professor has sexually harassed me. You're now in a, you have a complaint that the chair acted improperly, that the chair violated some confidentiality rule internally of the university. The chair here took the complaint, took it to the dean, took it up the chain of command. There was a hearing and a determination. Any chair, any faculty member who is then subsequently brought into the circuit court on a lawsuit saying you didn't handle that properly, you violated a procedure. You violated operating rule 1.556 of the Southern Illinois University, which says that in handling the paperwork of the claim, you are not to circulate it to anyone other than by courier high confidentiality marked on the stamp. You don't do that. You're going to be personally sued for doing your job in handling a sexual harassment claim for an individual student. And I can tell you, the policy is we don't involve the courts in operating and acting as super HR departments in policing Southern Illinois University, Edwardsville. That's where we're going. And I think there's a chilling effect on anybody who has a student come to him with a sexual harassment complaint to say, hey, I just simply, I'm not going to deal with this because I'm going to get sued if it goes on up. And I've been part of that process. These gentlemen were acting within the scope of their authority when they were going, secondly, with the letter. Office of Inspector General directed the letter be sent. It is claimed that that went off to somebody that it didn't belong to. But the fact is that's where the court of claims to sort it out because they were within their official capacities. They were operating in an area that they ordinarily operate in. This is their business as dean and chair of Southern Illinois University, Edwardsville. The case goes to the court of claims because what this is is an attempt to control the operations of the university. And it will impact their operations and personnel decisions. That's what the court is talking about. We're turning ourselves into a super HR department. There's not any specificity here of what rule of confidentiality was broached in the complaint, to whom we're talking about with these other officials. And I think Judge Matosian had it right. Thank you for your time. Remodel. I'd first like to address some of the statements made by Attorney for Romero. This case is not about the letter being submitted in the appeal process. It's not about the letter being given in the proper chain of command up to the chancellor. It's about after the appeal is over that this conduct occurred. And I would refer the court to paragraph 15 of the Second Amendment complaint. Acting outside the scope of their employment and employment process and rules and guidelines, Sedisius and Romero distributed Exhibit A in general to a portion of the university community in general, from chairs of other departments, and on information and belief orally to various individuals throughout the university. Paragraph 16. Taking Exhibit A from the appeal process of the provost's decision, distributing it in document form to persons outside the appeal process, and orally distributing the information contained in Exhibit A, was not part of either defendant's jobs, was not a procedure set out in university policies, rules, and guidelines, but rather was conduct composed of separate, intentional, malicious acts not connected to any job duties of the defendants. So, I mean, taking, you know, a snapshot of paragraph 18, officials, I think you're correct. Officials include chairs, department chairs in other departments as well as other colleges within the university. We're not referring to the chancellor in this case at all. As far as would circumstances be different if the distribution of this letter was limited to those people in the department that were voting in the election, I still feel no. They still violated the confidentiality rules of the appeal process and the sexual harassment complaint procedures. There are allegations and circumstances in this case that they were acting out of personal malice, in retaliation, and not having anything whatsoever to do with the university. They were acting outside of their employment and in excess of their authority. If you're acting out of malice, personal intent, you are not acting within the scope of your employment. You're not acting within the scope of your authority, unless there are any other questions. Okay, so thank you, counsel, and I thank both of you for your briefs and for your argument. We'll take this case under advisement.